FRANKLIN L. SLAUGH, #2976
Attorney for Debtor
880 East 9400 South, Suite 103
Sandy, Utah 84094
(801) 572-4412

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH

In re:  RETREAT AT ZION, LLC,                )

                                     :      Bankruptcy No.  16-24525-WTT

       Debtor.                       Chapter 11

                                       )

                                     )

                                     :

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§105, 361, 362, 363, 364 AND 507 (I) AUTHORIZING DEBTOR IN POSSESSION TO OBTAIN POST-PETITION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (IV) GRANTING ADEQUATE PROTECTION; (V) MODIFYING THE AUTOMATIC STAY; AND (VI) SCHEDULING A FINAL HEARING**

Retreat at Zion, LLC ("Debtor"), the debtor in possession in the above-captioned

bankruptcy case, by and through its counsel, Franklin L. Slaugh, submits this motion (the "Motion")

for entry of an order pursuant to 11 U.S.C. §§105, 361, 362, 363, 364 and 507:  (i) authorizing post-

petition financing; (ii) authorizing use of cash collateral; (iii) granting liens and providing

superpriority administrative expense status; (iv) granting adequate protection; (v) modifying the

automatic stay, and (vi) scheduling a final hearing in connection with debtor in possession financing

to the Debtor by Kirch & Todd Lending (the "DIP Lender"). This Motion is supported by the *Declaration of Kevin Brough.* In further support of the Motion, the Debtor respectfully represents:

## RELIEF REQUESTED

The Debtor requests and order approving the use of property of the estate other than in the ordinary course of business and approving the Debtor's incurring of debt. Specifically, the Debtor requests an order (1) authorizing the Debtor to enter into the DIP Loan (as defined herein) with the DIP Lender in accordance with the terms in the DIP Term Sheet and the proposed interim order (the "Interim Order") and the Final Order (as defined herein), and to take all actions necessary to consummate the DIP Loan, (2) authorizing and approving the Debtor to grant priming liens on all of its current and future property as collateral and super priority claims in connection with the DIP Loan, (3) authorizing and approving the use of cash collateral, (4) approving modification of the automatic stay to the extent necessary to implement and enforce the terms and provisions of the DIP Loan, and (5) scheduling a final hearing (a "Final Hearing") for entry of an order granting the relief requested in the Motion on a final basis (the "Final Order") and approving the form of notice with respect to the Final Hearing.

## JURISDICTION

1.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2.      The statutory bases for the relief requested herein are 11 U.S.C. §§105, 361, 362, 363, 364 and Federal Rules of Bankruptcy Procedure 2002, 4001, 6004, 9014 and 9019 and the Local Rules of the United States Bankruptcy Court for the District of Utah ( the "Court").

## STATEMENT OF FACTS

3.      On May 25, 2016 the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code (the "Petition Date"). During the pendency of its chapter 11 case ("the Bankruptcy Case") the Debtor is operating and managing its business as a debtor in possession pursuant to sections 1107 and 1108 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

4.      After obtaining financing for the purchase of the facility at its current location in Rockville, Utah in July, 2014, the Debtor experienced difficulties in getting final licensing approval from the city of Rockville for approximately 18 months and was forced to use funds obtained in the initial financing to maintain operations with no actual operating revenue being realized by Debtor in the interim. As a result, the Debtor defaulted on its obligations, including, significantly, the senior lien on the Debtor's property held by Riverbend Development LLC.

5.      The Debtor is now duly licensed and operational, but the funds that were to be utilized by the Debtor for marketing and promotional purposes were exhausted during the 18 month period described in paragraph 4 above. Additionally, many of the Debtor's prior contacts and sources of referrals in the surrounding vicinity (doctors, hospitals, clinics, treatment facilities, insurance companies) looked elsewhere to refer their clients during the 18 months that Debtor was unable to provide its customary services and treatment.

6.      The Debtor now needs working capital to recapture its position in the marketplace in southern Utah and to reestablish its business and fill its 16 bed facility to capacity.

7.      The Debtor sought working capital to enable it to operate once it filed for protection under chapter 11. The Debtor contacted Kirch & Todd Lending, ("Kirch & Todd") 782 South river Road, Unit 231, St. George, Utah 84790. Negotiations with Kirch & Todd led to the filing of this Motion.

## A. **DIP Financing with DIP Lender**

8.       The Debtor is seeking authority to enter into a debtor in possession financing transaction with Kirch & Todd, the DIP Lender, in which the DIP Lender will lend up to $250,000.00 to the Debtor (the "DIP Loan"). The Debtor will grant the DIP Lender a lien on encumbered property that is equal or senior to the existing first position lien on the Debtor's real property, and a perfected first priority security interest in all of Debtor's personal property assets to secure the DIP Loan, and will grant the Dip Lender a superpriority administrative claim. A true and correct copy of the DIP Lender Loan Terms Proposal, which contains material provisions of the DIP Loan is attached hereto as **Exhibit A** (the "DIP Term Sheet"). The Debtor and the DIP Lender have agreed that the transactions contemplated by the DIP Loan shall be documented by a Debtor-in-Possession Credit Agreement (the "DIP Credit Agreement") in accordance with the DIP Terms proposal outlined in Exhibit A.

9.       The Debtor's need to use Cash Collateral and to obtain credit pursuant to the DIP Loan is immediate and critical in order to enable the Debtor to continue operations and to administer and preserve the value of its estate. The ability of the Debtor to finance its operations, renew, promote and maintain business relationships, to pay its employees, protect the value of its assets and otherwise finance its operations requires the availability of working capital from the DIP Loan and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, its estate, its creditors, its patients currently under care, and equity holders. The Debtor does not have sufficient available sources of working capital and financing to operate its business or to maintain its properties in the ordinary course of business without the DIP Loan and authorized use of Cash Collateral.

10.     The Debtor has been unable to obtain unsecured credit financing as an administrative expense or credit obtained under Bankruptcy Code Section 364(c), either with special administrative expense priority, secured by a lien on unencumbered property or secured by a junior lien on encumbered property. The DIP Lender (Kirch & Todd) will only provide the DIP Loan if they receive a first priority senior lien on the Debtor's property and super priority administrative claims.

11.     The Secured Lender Riverbend Development, LLC claims a security interest in the Debtor's profits and income. These constitute "Cash Collateral". [See *Trust Deed, Security Agreement, and Fixture Filing With Assignment of Rents* attached hereto as **Exhibit "B"**.

12.     No other lender purports to have a security interest in the Debtor's "Cash Collateral."

13.     The Debtor's 12 month projected budget is attached hereto as **Exhibit "C"**.

14.     To continue to conduct its business in the ordinary course of business, The Debtor-in-Possession must have access to approximately $45,000 to $60,000 in cash collateral for the next five (5) months, increasing to $80,000 in November, 2016.

15.     As adequate protection, the Debtor is proposing to pay Secured Lender the sum of $13,303.27 monthly, beginning in the month of July, 2016, with Court approval.

**B.  Summary of Provisions of DIP Loan from DIP Lender**

16.     In general the proceeds of the DIP Loan are to be used as follows:  (i) to pay fees, costs and expenses of the DIP Lender; (ii) to pay adequate protection payments to the existing senior lienholder, Riverbend Development, LLC if the Court deems the existing equity cushion to be insufficient adequate protection; (iii) to pay post-petition operating expenses of the borrower (Debtor) incurred in the ordinary course of business; (iv) to pay costs and expenses of administration of the Chapter 11 Case, including payment of approved professional fees; and (v) to

pay other amounts as specified in the Budget and/or operative documentation allowed by the
Bankruptcy Court in amounts and categories consistent with the Budget.

17.    As indicated above, the Debtor is unable to obtain the required funds in the form of:
unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code; an
administrative expense pursuant to section 364(a) or 364(b) of the Bankruptcy Code, or secured
debt as described in section 364(c)(2) or 364(c)(3) of the bankruptcy Code except as set forth in this
Motion and the proposed Interim Order.  The terms of the DIP Loan are the best the Debtor has
been able to identify, are fair and reasonable under the circumstances, reflect the Debtor's exercise
of prudent business judgment consistent with its fiduciary duty, and are supported by reasonably
equivalent value and fair consideration.  The Dip Loan has been negotiated in good faith and at
arm's length between the Debtor and the DIP Lender.

### C.    Required Disclosures under the Guidelines for Cash Collateral and Financing Motions & Stipulations, Bankruptcy Rule 4001(c) and the Local Rules of this Court.

18.    The proposed DIP Terms contains the following provisions requiring disclosure
under the Guidelines for Cash Collateral & Financing Motions & Stipulations, Bankruptcy Rule
4001(c) and the Local Rules of this Court.

| Disclosure Content and Related Bankruptcy Rule | Description |
|---|---|
| Commitment and Disbursements 4001(c)(1)(B) | **DIP Loan Terms:**  Commitment: Kirch & Todd Lending would lend the Debtor a total principal loan amount of $250,000.00 (the "Commitment"). Origination Fee:  10% of the DIP Loan amount |
| Interest 4001(c)(1)(B) | Twelve per cent (12%) per annum, paid monthly, interest only |
| Term 4001(c)(1)(B) | The maturity date=12 months from the closing of the DIP Loan |
| Events of Default 4001(c)(1)(B) | Each of the following shall constitute an Event of Default, unless otherwise waived by the DIP Lender:  (i) failure to make payments when due; (ii) noncompliance with covenants, including, without limitation, failure to comply with the Budget within agreed upon variances; |

| | |
|---|---|
| | (iii)impairment of loan documentation or security; (iv) dismissal of the Chapter 11 case or conversion to a chapter 7 case; (v) appointment of a chapter 11 trustee; (vi) entry of an order granting any super-priority claim which is senior or pari passu with the DIP Lender's claim under the DIP Loan. |
| Priority or Liens 4001(c)(1)(B)(i) | The DIP Loan shall be secured by: a senior or equal lien on the Debtor's real property located at 991 West 230 South, Rockville, Utah, Washington County. All amounts owing by the Debtor under the DIP Loan will at all times constitute allowed super-priority administrative expense claims in the Chapter 11 Case under Section 364(c)(1) of the Bankruptcy Code, having priority over all pre-petition and post-petition liabilities, including administrative expenses of the kind specified in Bankruptcy Code Sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1114 or otherwise. This priority will be junior and subordinate only to: (i) the payment of estate professional fees and disbursements incurred in the Chapter 11 Case to the extent such fees and disbursements are in accordance with the Budget and approved by the Bankruptcy Court; (ii) subsequent to an Event of Default, the payment of approved fees of estate professionals and any Ch. 7 trustee that may be appointed in the Bankruptcy Case; (iii) U.S. Trustee fees pursuant to 28 U.S.C. §1930. |
| Adequate Protection Or Priority of Pre-petition Claims 4001(c)(1)(B)(ii) | Adequate protection will be afforded to the Pre-Petition Lenders in the form of (i) the existing equity cushion existing on the Debtor's real property; or, to the extent required by the Court (ii) administrative expense priority status; (iii) replacement liens on all post-petition assets, to the extent of the diminution in value of any pre-petition collateral and the use of cash collateral, in each case, junior only to the lien of the DIP Lender, and (iv) payment of interest on the Pre-Petition Debt and professional fees and expenses. |
| Validity of Liens 4001(c)(1)(B)(iii) | The Debtor acknowledges and agrees that, as of the Petition Date, (a) the Prepetition Secured Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable, and properly perfected. (b) As of the Petition Date, the Prepetition Secured Liens have priority over any and all other liens, if any, on the Prepetition Collateral. (c) The Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor. (d)The only challenge that exists as to the Prepetition Secured Obligations is the calculation of the amount due on the Secured Obligation of Riverbend Development. (e) The Debtor and its estate has no claims, objections, challenges, causes of actions, and/or choses in action against any of the Prepetition Secured Parties, with the exception of the challenge set forth in subparagraph (d) immediately above. (f) As of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Secured Obligations exceeded the amount of those obligations, and accordingly the Prepetition Secured Obligations are allowed secured claims within the meaning of section 506 of the Bankruptcy Code, of not less than $2,250,000.00, together with accrued interest, accruing interest, |

| | fees, costs and other charges. |
|---|---|
| Waivers of Automatic Stay 4001(c)(1)(B)(iv) | Unless otherwise waived in writing by the DIP Lender in its sole discretion, the following shall constitute an Event of Default: granting of relief from the automatic stay to permit foreclosure on any assets of the Borrower constituting Collateral. |
| Waivers or Modifications regarding Plan Filing 4001(c)(1)(B)(v) | There is currently no waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under §363(c), or request authority to obtain credit under §364. |
| Deadlines 4001(c)(1)(B)(vi) | The deadlines for filing a plan of reorganization for the Debtor are those set forth in §§1121 and 1129 of the Bankruptcy Code. |
| Waivers of Nonbankruptcy Law 40014001(c)(1)(B)(vii) | There are currently no waivers or modifications respecting the applicability of nonbankruptcy law relating to perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien. |
| Releases and Waivers of Causes of Action 4001(c)(1)(B)(viii) | There are currently no releases, waivers, or limitation on any claims or other causes of action belonging to the Debtor's Estate, including any modification of the statute of limitations or other deadline to commence an action. |
| Indemnification 4001(c)(1)(B)(ix) | The DIP Loan will contain indemnity provisions in favor of the DIP Lender customary for similar debtor-in-possession financings. |

| | |
|---|---|
| Releases, Waivers, or Limitations of Any Right under §506(c) 4001(c)(1)(B)(x) | There are currently no releases, waivers or limitations of any rights granted Under §506(c) of the Bankruptcy Code. |
| Granting of Certain Liens 4001(c)(1)(B)(xi) | Inapplicable |
| Cross-Collateralization Local Rule 4001-2 (a)(1)(A) | Inapplicable |
| Provisions Binding the Estate Local Rule 4001-2 (a)(1 | See Validity of Liens above |
| Waiver of 552(b) Rights Local Rule 4001-2 (a)(1)(C) | See "Releases, Waivers, or Limitations of Any Right Under §506(c)" above. |
| Granting Liens on Section 5 Claims Local Rule 4001-2 (a)(1)(D) | Inapplicable |
| Prepetition and Post-Petition Secured Debt Local Rule 4001-2 | Inapplicable |

| | |
|---|---|
| (a)(1)(E) | |
| Diparate Treatment of Debtor and Committee Professionals Local Rule 4001-2 (a)(1)(F) | Inapplicable |
| Priming Liens Without Consent Local Rule 4001-2 (a)(1)(G) | Inapplicable |
| Summary of Loan Local Rule 4001-2 (a)(2) | All essential terms provided by this Local Rule are set forth above. |

# LEGAL ARGUMENT

**A.    Legal Standard**

**1.        Bankruptcy Code Section 363(b)(1).**

Bankruptcy Code section 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate..."

In considering a proposed use of property outside of the ordinary course, courts look at whether the proposed use of the property is in the best interests of the estate based on the facts of the case. *Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 19-20 (9th Cir. BAP 1988) (citing *In re Continental Air Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986)). This requires an examination of the "business justification" for the proposed use. *Walter,* 83 B.R. at 19 ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business...").

In determining whether the use of estate property outside of the ordinary course of business should be approved, "the bankruptcy judge should consider all salient factors pertaining to the proceeding and,

accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." *Id.*;

*Continental Air Lines,* 780 F.2d at 1226.

### 2.      Bankruptcy Code Sections 364(c) and (d).

Section 364(c) of the Bankruptcy Code provides: "If the trustee is unable to obtain unsecured

credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice

and a hearing, may authorize the obtaining of credit or the incurring of debt-(1) with priority over any or

all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a

lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on

property of the estate that is subject to a lien."

Section 364(d)(1) provides: "The court, after notice and a hearing, may authorize the obtaining of

credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a

lien only if (A) the trustee is unable to obtain such credit otherwise; and (B) there is adequate protection

of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is

proposed to be granted."

When a debtor's business judgment is consistent with the provisions of and polices underlying

the Bankruptcy Code, courts routinely grant a debtor considerable deference in acting in accordance

with its business judgment. *See, e.g., In re Ames Dept. Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y.

1990) (courts have discretion under Bankruptcy Code §364 to permit debtor to exercise reasonable

business judgment so long as (i) the terms of the financing agreement do not "leverage the bankruptcy

process and powers" and (ii) the financing agreement's purpose is primarily to benefit the estate, and

not a party in interest); *see also In re Defender Drug Stores,* 145 B.R. 312, 316-317 (9th Cir. BAP

1992) ("Bankruptcy courts, however, have regularly authorized postpetition financing arrangements

containing lender incentives beyond the explicit priorities and liens specified in section 364. While

certain favorable terms may be permitted as a reasonable exercise of the debtor's business judgment,

bankruptcy courts do not allow terms in financing arrangements that convert the bankruptcy process

from one designed to benefit all creditors to one designed for the unwarranted benefit of the

postpetition lender. Thus, courts look to whether the proposed terms would prejudice the powers and

rights that the Code confers for the benefit of all creditors and leverage the Chapter 11 process by

granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of

other parties in interest." (citations omitted)); *In re Berry Good, LLC,* 400 B.R. 741, 747 (Bankr. D. Ariz.

2008) (nearly identical discussion).

### 3.    Bankruptcy Code Sections 361, 362.

In determining the extent of protection to be given a secured creditor or an entity whose

property interests are involved, the court must ascertain the property's value because the degree of

protection required is related to the value of the property interest affected. *Wright v. Union Cent. Life

Ins. Co,* 311 U.S. 273, 85 L.Ed. 184, 61 S. Ct. 196 (1940). The Property, in the instant case, is valued

at $3,000,000.00 as of December 17, 2015. [See MAI Appraisal Report prepared by RCS Appraisal,

Inc. attached hereto as Exhibit "B".] The encumbrances against the property consist of a Trust

Deed, Security agreement, and Fixture Filing in favor of Riverbend Development, LLC, securing a

note in the principal sum of $1,300,000.00 and a second lien in favor of Nancy Sanchez securing a

note in the principal sum of $950,000.00. This value leaves equity in the real property of the Debtor

in the sum of $750,000.00. This "equity cushion" would constitute adequate protection under

§362(d)(1). *Re Shapiro,* 109 B.R. 127 (Bankr. E.D. Pa. 1990; *Re Mellor,* 734 F. 2nd 1396 (9th Cir. 1984).

4.    **Bankruptcy Code Section 105(a).**

Section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.

B.    **Authorizing the Debtor to Obtain the Proposed Post-Petition Financing and Granting Related Relief is Proper.**

As discussed above, the proposed DIP Loan will allow the Debtor to obtain the cash it needs to maintain necessary operations while preserving the value of the Debtor's estate for the benefit of creditors.

Based upon all of the above, the Debtor believes that entering into the DIP Loan based on the terms of the DIP Term Sheet reflects a sound and prudent exercise of its business judgment under the circumstances, and is in the best interests of the estate and its creditors. The Debtor therefore seeks a Court order approving these actions.

## CONCLUSION

The relief requested in this Motion should be granted because it is necessary to ensure the continued operations and reorganization of the Debtor, and because the Debtor believes that granting such relief ultimately will benefit its creditors in this case.

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

1.    Authorizing the Debtor to enter into the DIP Loan with the DIP Lender in accordance with the terms in the DIP Term Sheet and the proposed Interim and Final Orders, and to take all actions necessary to consummate the DIP Loan;

2.    Authorizing and approving the Debtor to grant priming liens on all of its current and future property as collateral and super priority claims in connection with the proposed DIP Loan;

3.      Authorizing and approving the use of cash collateral;

4.      Approving modification of the automatic stay to the extent necessary to implement and enforce the terms and provisions of the proposed DIP Loan; and

5.      Granting related relief, including setting a Final Hearing on this Motion.

Dated this 14th day of July, 2016.

/s/Franklin L. Slaugh
Franklin L. Slaugh
Attorney for Debtor

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing Motion upon all parties-in-interest as shown on the official court mailing matrix attached hereto this 14th day of July, 2016 by electronic notice to CM/ECF filers, otherwise by mail, first-class postage prepaid.

/s/Franklin L. Slaugh
Franklin L. Slaugh

Label Matrix for local noticing
1088-2
Case 16-24525
District of Utah
Salt Lake City
Thu Jul 14 10:46:12 MDT 2016

Kent L. Christiansen
Sage Law Partners, PLLC
Station Park Office Plaza
140 North Union Avenue
Suite 220
Farmington, UT 84025-2954

Nancy Welti Sanchez
PO Box 630191
Rockville, UT 84763-0191


Riverbend Development, LLC
c/o Sage Law Partners, PLLC
Attorney Kent L. Christiansen
140 North Union Ave., Suite 220
Farmington, UT 84025-2954

Franklin L. Slaugh
880 East 9400 South
Suite 103
Sandy, UT 84094-4140

Americas
3807 S. 1600 East
Circle #76
St. George, UT 84790-6270


Angela E. Graff
2945 Alder Circle
St. George, UT 84790-6901


Pace's Culligan
PO Box 562
Cedar City, UT 84721-0562


Riverbend Development, LLC
601 North Bald Mountain
Alpine, UT 84004-1932


United States Trustee
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111-3402

Laurie A. Cayton tr
US Trustees Office
Ken Garff Building
405 South Main Street
Suite 300
Salt Lake City, UT 84111-3402

John V. Mayer, Trustee
Sage Law Partners, LLC
140 North Union Ave., Ste. 220
Farmington, UT 84025-2954


Retreat at Zions, LLC
P.O. Box 1025
Springdale, UT 84767-1025


Rockville/Springdale Fire Protection Dis
PO Box 159
Springdale, UT 84767-0159


End of Label Matrix
Mailable recipients      13
Bypassed recipients       0
Total                    13

# EXHIBIT A

# KIRCH & TODD LENDING
## 782 SOUTH RIVER ROAD, UNIT 231
## SAINT GEORGE, UT 84790

June 21, 2016

ATTN: Kevin Brough

Kirch & Todd Lending is prepared, to provide financing for a Debtor-In-Possession loan in the form of a 1st mortgage loan ("**Loan**") on the property(s) located at **Retreat at Zion, Grafton Estate Road, Rockville, Utah 84763 (Including all APN's and addresses associated with the property(s))**. This letter summarizes the terms of the proposed transaction, which, if applied by the execution of this letter, shall be reviewed by Kirch & Todd Lending for its consideration. The closing of the loan shall be subject to satisfactory completion of Kirch & Todd Lending's due diligence with respect to all aspects of the proposed transaction. Kirch & Todd Lending is a private lender, and is aware that the proposed Borrower is an entity in bankruptcy, and that Loan would be expressly conditioned upon court approval.

## LOAN TERMS

The definitive loan documents shall include, among other things, the following terms and conditions:

| | |
|---|---|
| **Borrower:** | **Retreat at Zion, LLC** |
| **Guarantor:** | **Kevin Brough** and any other person with an ownership of 20% or higher will be required to sign the Guaranty. |
| **Lender:** | Kirch & Todd Lending or an affiliate, subsidiary or accommodation originator as determined by Kirch & Todd Lending (collectively "**Lender**"). Lender will have the right to participate, syndicate, sell or transfer the Loan in whole or in part. |
| **Property:** | **Property is located at Retreat at Zion, Grafton Estate Road, Rockville, UT 84763 (Including all APN's and addresses associated with the property).** |
| **Purpose:** | The Borrower attests that this loan is for a business purpose. |
| **Loan Amount:** | Total loan amount of **$250,000 (Two Hundred Fifty Thousand Dollars).** |

Initials of Borrower _____

| | |
|---|---|
| **Maturity:** | **12 months** from the Closing. |
| **Interest Rate:** | **12% (Twelve Percent)** per annum, paid monthly, interest only. |
| **Origination Fee:** | **10% (Ten Percent)** of the Loan Amount. |
| **Value:** | Kirch & Todd Lending will not require an appraisal on the property, whereas a site visit by one of the Principals of Kirch & Todd Lending has already been done, in order to evaluate the property. |
| **Processing Fee:** | $495.00 (Four Hundred Ninety-Five Dollars) |
| **Funding Fee:** | $995.00 (Nine Hundred Ninety-Five Dollars) |
| **Collateral:** | A first priority lien on Borrower's fee simple interest in the Property and the improvements thereon together with any personal property owned by Borrowers related to Property. |
| **Reporting:** | Borrowers shall provide reports to Lender on a monthly or quarterly basis as set forth in the definitive loan agreement relating to the financial condition of the Property, if the condition of the Property changes, the Borrower's financial condition changes, or any financial item relating to insurance on the subject property changes. |
| **Closing Conditions:** | Conditions to closing shall include, among other things, title insurance from a title company satisfactory to Lender insuring the 1st priority lien of Lender's mortgage. The property will remain non-owner occupied through the duration of the loan. Borrow shall also provide a copy of all documents related to the bankruptcy, including all court documents, motions, and any reports filed with the court. |
| **Expenses:** | Upon signing the loan a deposit of **$5,000.00 (Five Thousand Dollars)** will be required to be wired for loan documents, any site visits, legal, a background check, and due diligence. Any funds that are not utilized will be returned. Kirch & Todd Lending does not profit on any of these costs at all, and invoices will be available on request. The Borrower will be responsible for all costs related to the loan. Expenses will be paid by the Borrower, including but not limited to loan document preparation, escrow, title insurance, site visits and a background check. By initialing below Borrower and guarantor authorizes Kirch & Todd Lending to perform a background and/or credit check at a cost to the guarantor of **$450.00**. Complete attached Borrower's authorization. |

**Initials of Borrower _____**

**Initials _____**

| | |
|---|---|
| **Brokers:** | Borrower represents and warrants to Lender that they have not retained any other lender/broker other than Kirch & Todd Lending and hereby shall indemnify and hold Lender harmless from any breach of this representation and warranty and from any payment for any sums claimed to be owed to Borrower's Broker for any reason relating to the Loan. Borrowers' Broker's Brokers shall be paid at the Loan closing. |
| **Repayment:** | Interest only payments will be drawn from Borrower's bank account via ACH debit. Exact payment amount may vary depending on actual loan amount. |
| **Insurance:** | Borrower shall maintain at all times, at Borrower's sole cost and expense, fully paid policies of liability, property damage, casualty, business interruption, and all other insurance that may be required by Lender under the Loan Documents. All insurance shall be maintained with responsible and reputable insurance companies or associations satisfactory in all respects to Lender. Each policy of insurance shall name Lender as an additional insured or loss payee, as appropriate, and shall include mandatory 30-day written notice to Lender of any modification or cancellation of such policy. |
| **Indemnification:** | Borrower hereby agrees to protect, defend, indemnify, release and hold harmless Kirch & Todd Lending and its respective principals, affiliates, officers, employees, agents and other representatives for, from and against any and all claims, suits, liabilities, losses, costs, expenses (including reasonable attorneys' fees and costs) imposed upon or incurred by or asserted against any indemnified party arising out of or relating to the Property, this letter or the transactions contemplated thereby, except for those arising out of the willful misconduct or gross negligence of Lender. This indemnification provision shall survive the expiration or termination of this letter, but shall not survive the execution of definitive loan documents. |
| **Signatures:** | Execution and delivery of this letter may be made by facsimile or it can be scanned and emailed. |
| **Assignment:** | The provisions of this letter may be amended or modified only upon the written consent of each of the parties hereto. This letter may not be assigned by Borrower. |
| **Governing Law:** | This letter shall be governed by the laws of the State of Utah. |

**Initials of Borrower _____**

**Confidentiality:**  Borrower, on their own behalf and on behalf of their affiliates and representatives, agrees to treat this letter and the information contained in this letter, including the terms and conditions of the Loan, in a confidential manner and shall not disclose such information without Lender's prior written consent.

**Exclusivity:**  From the date hereof through the closing, Borrower and Guarantor will not directly or indirectly negotiate, entertain or otherwise pursue or obtain or permit anyone on its behalf to directly or indirectly negotiate, entertain, pursue or obtain, any offers to provide financing or other capital for the Property that may be an alternative to the Loan with the exception of seeking a discount on the existing senior loan and seeking 'terms' from existing creditors. Borrower and Guarantor shall deal exclusively with Lender with regard to the Loan to be provided pursuant hereto commencing on the date hereof and continuing while Lender performs due diligence and documentation of the Loan.

Borrower and Guarantor acknowledges and agrees that: (i) this letter is not intended to be, and should not be construed to be, a commitment to provide the Loan or to engage in any transaction; (ii) the terms outlined above regarding the Loan are subject to completion of due diligence, credit approvals, legal review and documentation satisfactory to Lender; (iii) the terms and conditions for the Loan which are outlined in this letter do not necessarily include all of the material terms and conditions which will be required in the documentation of the Loan; and (iv) the provisions of this sections above captioned "Brokers", "Expenses", "Expenses Deposit", "Indemnification", "Signatures", "Assignment", "Governing Law", "Confidentiality", "Exclusivity"' shall be binding on the parties hereto and are the only provisions in this letter that are binding. Any obligation on the Lender's part hereunder is and remains subject to te approval of the Loan by Lender's internal credit committee based upon Lender's review of the final and complete underwriting file.

Please feel free to call me at (435)729-9449 if you have any questions. Thank you again for the opportunity to work with you on this project.

You may accept the terms of this letter by executing this letter in the space provided below and returning such executed copy to the undersigned via facsimile at (435)817-4217 or via email at james@kirchandtodd.com. This letter shall expire, if it is not previously accepted, on _____ at 5:00pm .

Sincerely,

**Initials of Borrower** _____

Kirch & Todd Lending

James Rose, President

**AGREED AND ACCEPTED:**

**THIS _____ DAY OF _____, 2016.**

**BORROWER:**

**Retreat at Zion, LLC**

**By:** _____

**GUARANTOR: Kevin Brough**

**By:** _____

**Initials of Borrower _____**

# EXHIBIT B

DOC # 20140022086
Trust Deed Page 1 of 10
Russell Shirts Washington County Recorder
07/21/2014 04:00:05 PM Fee $29.00 By UNITY
TITLE, LLC

When recorded Mail To:
Riverbend Development, LLC
601 North Bald Mountain
Alpine, Utah 84004

## TRUST DEED, SECURITY AGREEMENT, AND FIXTURE FILING
### With Assignments of Rents

THIS TRUST DEED, SECURITY AGREEMENT, AND FIXTURE FILING ("Security Instrument"), is made on July 20, 2014 by **THE RETREAT AT ZION, LLC. DBA BALANCE HEALTH SYSTEMS**, as Grantor ("Borrower" or "Trustor"), whose address is 2835 Sandy Cove, Santa Clara, UT 84765, in favor of Cole Cannon attorney as Trustee ("Trustee"), for the benefit of **RIVERBEND DEVELOPMENT, LLC**, a Utah Limited Liability Company ("Lender" or "Beneficiary")). Borrower owes Lender the principal sum of **ONE MILLION THREE HUNDRED and 00/100 Dollars** (U.S. $1,300,000.00) plus accrued and unpaid interest thereon. This debt is evidenced by Borrower's promissory note dated the same date of this Security Instrument ("Note"), which provides for monthly payments, with the full principal and accrued and unpaid interest thereon, if not paid earlier, due and payable on April 20, 2015. This Security Instrument secures to Lender the full and prompt payment when due (whether at the stated maturity, by acceleration or otherwise) of all obligations, liabilities and indebtedness (including, without limitation, principal, premium, interest, reimbursement obligations, fees and indemnities thereon (including, without limitation, all interest that accrues after the commencement of any case, proceeding or other action relating to the bankruptcy, insolvency, reorganization or similar proceeding of the Trustor at the rate provided for in the respective documentation, whether or not a claim for post-petition interest is allowed in any such proceeding)) of the Borrower to the Lender, whether now existing or hereafter incurred under, arising out of, or in connection with the Note and the due performance and compliance by the Lender with all of the terms, conditions and agreements contained in the Note and in such other credit documents . For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, for the benefit and security of Beneficiary, all of Trustor's right, title, and interest in and to the following described real property located in **Washington County, State of Utah** and more particularly described as follows:

See Legal Description Attached hereto as "Exhibit A"

TOGETHER WITH all buildings, fixtures and improvements thereon and all water rights, rights of way, easements, rents, issues, profits, income, tenements, hereditaments, privileges and appurtenances thereunto belonging, now or hereafter used or enjoyed with said property, or any part thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues, and profits (collectively, the "Property");

BORROWER COVENANTS that Borrower has fee simple title to the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Page 1 of 10     Initials _____ _____ _____

**TO PROTECT THE SECURITY OF THIS** Security Instrument, **TRUSTOR AGREES:**

1.      To keep said Property in good condition and repair, not remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to comply with all laws, covenants and restrictions affecting said Property; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said Property in violation of law; to do all other acts which from the character or use of said Property may be reasonably necessary; the specific enumerations herein not excluding the general. Trustee, upon presentation to it of an affidavit signed by Beneficiary, setting forth facts showing a default by Trustor under this paragraph, is authorized to accept as true and conclusive all facts and statements in such affidavit, and to act upon such affidavit hereunder.

2.      To provide and maintain in full force and effect policies of property, hazard and liability insurance, of such type or types and amounts as Beneficiary may require with respect to the Property, together with statutory workers' compensation insurance with respect to any work to be performed on or about the Property.  Such insurance shall be carried in companies approved by Beneficiary with loss payable clauses or "additional insured listing" in favor of and in form acceptable to Beneficiary.  In the event of loss, Trustor shall give immediate notice to Beneficiary. Trustor hereby irrevocably authorizes and directs each insurance company providing any policy of insurance to the Lender with respect to the Property to make payment for such loss directly to Beneficiary instead of to Trustor. Beneficiary may, at its option, apply the insurance proceeds, or any part thereof, to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged.

3.      To deliver to, pay for and maintain with Beneficiary until the indebtedness secured hereby is paid in full, such evidence of title as Beneficiary may require, including abstracts of title or policies of title insurance, together with any endorsements requested by Beneficiary,  and any extensions or renewals thereof or supplements thereto.

4.      To pay for any and all reasonable fees, costs and expenses of whatever kind or nature incurred in connection with the creation, preservation or protection of the Beneficiary's liens on, and security interest in, the Property, including, without limitation, all fees and taxes in connection with the recording or filing of instruments and documents in public offices (including stamp and mortgage recording taxes or other taxes imposed on the Beneficiary by virtue of its ownership of this Security Instrument), which are imposed upon the recording of this Security Instrument or thereafter, all reasonable attorneys' fees, payment or discharge of any taxes or liens upon or in respect of the Property, premiums for insurance with respect to the Property and all other reasonable fees, costs and expenses in connection with protecting, maintaining or preserving the Property and the Beneficiary's interest therein, whether through judicial proceedings or otherwise, or in defending or prosecuting any actions, suits or proceedings arising out of or relating to the Property, with interest from date of expenditure at the rate of Twelve percent (12%) per annum until paid, and the repayment thereof shall be secured hereby.

5.      To appear in and defend any action or proceeding purporting to affect the security hereof, the title to said Property, or the rights or powers of Beneficiary or Trustee; and should Beneficiary or Trustee elect to also appear in or defend any such action or proceeding, to pay all costs and expenses,

including cost of evidence of title and attorney's fees in a reasonable sum incurred by Beneficiary or Trustee.

6. To pay at least 10 days before delinquency all taxes and assessments affecting said Property, including all assessments upon water company stock and all rents, assessments and charges for water, appurtenant to or used in connection with said Property; to pay, when due, all encumbrances, charges and liens with interest, on said Property or any part thereof, which at any time appear to be prior or superior hereto; to pay all costs, fees, and expenses of this Trust.

7. No part of the Property or any legal or beneficial interest in the Property shall be sold, assigned, conveyed, leased, transferred or otherwise disposed of (whether voluntarily or involuntarily, directly or indirectly, or any interest in the Trustor, or by operation of law or otherwise).

8. Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said Property for such purposes; commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights of powers of Beneficiary or Trustee; pay, purchase, contest, or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and in exercising any such powers, incur any liability, expend whatever amounts in its absolute discretion it may deem necessary therefor, including cost of procuring evidence of title, employing counsel, and paying its reasonable fees.

IT IS MUTUALLY AGREED THAT:

9. Should said Property or any part thereof be taken or damaged by reason of any public improvement or condemnation proceeding, or damaged by fire, or earthquake, or in any other manner, Trustor shall give prompt written notice thereof to the Beneficiary and Beneficiary shall be entitled to all compensation, awards, and other payments or relief therefor, and shall be entitled at its option to commence, appear in and prosecute in its own name, any action or proceedings, or to make any compromise or settlement, in connection with such taking or damage. All such compensation, awards, damages, rights of action and proceeds, including the proceeds of any policies of fire and other insurance affecting said Property, are hereby assigned to Beneficiary, who may, after deducting therefrom all its expenses, including attorney's fees, apply the same to the repayment of any indebtedness secured hereby. Trustor agrees to execute such further assignments of any compensation, awards, damages, and rights of action and proceeds as Beneficiary or Trustee may require.

10. At any time and from time to time upon written request of Beneficiary, payment of its fees and presentation of this Security Instrument and the note for endorsement (in case of full reconveyance, for cancellation and retention), without affecting the liability of any person for the payment of the indebtedness secured hereby, Trustee may (a) consent to the making of any map or plat of said Property; (b) join in granting an easement or creating any restriction thereon; (c) join in any subordination or other agreement affecting this Security Instrument or the lien or charge thereof; (d) reconvey, without warranty, all or any part of said Property. The grantee in any reconveyance may be

described as "the person or persons entitled thereto", and the recitals therein of any matters or facts shall be conclusive proof of truthfulness thereof. Trustor agrees to pay reasonable Trustee's fees for any of the services mentioned in this paragraph.

11.   This Security Instrument shall constitute a security agreement upon the terms and conditions stated herein. As additional security for the performance of Trustor's covenants and obligations under the Note and this Security Instrument, Trustor shall default in the payment of any indebtedness secured hereby or in the performance of any agreement hereunder, Trustor shall have the right to collect all such rents, issues, royalties, and profits earned prior to default as they become due and payable. If Trustor shall default as aforesaid, Trustor's right to collect any such moneys shall cease and Beneficiary shall have the right, with or without taking possession of the property affected hereby, to collect all rents, royalties, issues and profits. Failure or discontinuance of Beneficiary at any time or from time to time to collect such moneys shall not in any manner affect the subsequent enforcement by Beneficiary to collect, shall be, or be construed to be, an affirmation by Beneficiary of any tenancy, lease or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Trust Deed to any such tenancy, lease or option.

12.   Upon any default by Trustor hereunder, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court (Trustor hereby consenting to the appointment of Beneficiary as such receiver), and without regard to the adequacy of any security for the indebtedness hereby secured, upon and take possession of said Property or any part thereof, in its own name sue for or costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.

13.   The entering upon and taking possession of said Property, the collection of such rents, issues, and profits, or the proceeds of fire and other insurance policies, or compensation or awards for any taking or damage of said Property, and the application or release thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

14.   The failure on the part of Beneficiary to promptly enforce any right hereunder shall not operate as a waiver of such right and the waiver by Beneficiary of any default shall not constitute a waiver of any other or subsequent default.

15.   Time is of the essence hereof. Upon default by Trustor in the payment of any indebtedness secured hereby or in the performance of any agreement hereunder, all sums secured hereby shall immediately become due and payable at the option of Beneficiary. In the event of such default, Beneficiary may execute or cause Trustee to execute a written notice of default and of election to cause said Property to be sold to satisfy the obligations hereof, and Trustee shall file such notice for record in each county wherein said Property or some part or parcel thereof is situated. Beneficiary also shall deposit with Trustee, the Note and all documents evidencing indebtedness secured hereby.

16.   After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of default and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said Property on the date and at the time and place designated in said notice of sale, either as a whole or in separate parcels, and in such order as it may

determine (but subject to any statutory right of Trustor to direct the order in which such property, if consisting of several known lots or parcels, shall be sold), at public auction to the highest bidder, the purchase price payable in lawful money of the United States at the time of sale. The person conducting the sale may, for any cause he deems expedient, postpone the sale from time to time until it shall be completed and, in every case, notice of postponement shall be given by public declaration thereof by such person at the time and place last appointed for the sale; provided, if the sale is postponed for longer than one day beyond the day designated in the notice of sale, notice thereof shall be given in the same manner as the original notice of sale. Trustee shall execute and deliver to the purchaser its deed conveying said Property so sold, but without any covenant or warranty, express or implied. The recitals in the deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Beneficiary, may bid at the sale. Trustee shall apply the proceeds of the sale of payment of (1) the costs and expenses of exercising the power of sale and of the sale, including the payment of the Trustee's and attorney's fees; (2) cost of any evidence of title procured in connection with such sale and revenue stamps on Trustee's Deed; (3) all sums expended under the terms hereof, not then repaid, with accrued interest at the applicable rate from the date of expenditures; (4) all late charges and penalties; (5) all other sums then secured hereby; and (6) the remainder, if any, to the person or persons legally entitled thereto, or the Trustee, in its discretions, may deposit the balance of such proceeds with the County Clerk of the county in which the sale took place.

17.    Upon the occurrence of any default hereunder, Beneficiary shall have the option to declare all sums secured hereby immediately due and payable and foreclose this Security Instrument in the manner provided by law for the foreclosure of mortgages on real property and Beneficiary shall be entitled to recover in such proceeding all costs and expenses incident thereto, including a reasonable attorney's fee in such amount as shall be fixed by the court.

18.    Beneficiary may appoint a successor trustee at any time by filing for record in the office of the County Recorder of each county in which said Property or some part thereof is situated, a substitution of trustee. From the time the substitution is filed for record, the new trustee shall succeed to all the powers, duties, authority and title of the trustee named herein or of any successor trustee. Each such substitution shall be executed and acknowledged, and notice thereof shall be given and proof thereof made, in the manner provided by law.

19. (a)    Trustor agrees to indemnify, reimburse and hold the Beneficiary and its successors, assigns, employees, affiliates and agents (hereinafter in this paragraph 19 referred to individually as "Indemnitee," and collectively as "Indemnitees") harmless from any and all liabilities, obligations, damages, injuries, penalties, claims, demands, actions, suits, judgments and any and all reasonable costs, expenses or disbursements (including reasonable attorneys' fees and expenses) (for the purposes of this paragraph 19 the foregoing are collectively called "expenses") of whatsoever kind and nature imposed on, asserted against or incurred by any of the Indemnitees in any way relating to or arising out of this Security Instrument or in any way connected with the administration of the transactions contemplated hereby or the enforcement of any of the terms of, or the preservation of any rights under this Security Instrument, or in any way relating to or arising out of the possession, operation, condition, sale, return or other disposition, or use of the Property (including, without limitation, latent or other defects, whether or not discoverable), the violation of the laws of any country, state or other governmental body or unit, any tort (including, without limitation, claims arising or imposed under the doctrine of strict liability, or for

or on account of injury to or the death of any person (including any Indemnitee), or property damage), or contract claim; provided that no Indemnitee shall be indemnified pursuant to this paragraph 19 for losses, damages or liabilities to the extent caused by the gross negligence or willful misconduct of such Indemnitee (as determined by a court of competent jurisdiction in a final and non-appealable decision). The Trustor agrees that upon written notice by any Indemnitee of the assertion of such a liability, obligation, damage, injury, penalty, claim, demand, action, suit or judgment, the Trustor shall assume full responsibility for the defense thereof. Each Indemnitee agrees to use its reasonable best efforts to promptly notify the Trustor of any such assertion of which such Indemnitee has knowledge.

(b)      Without limiting the application of paragraph 19 hereof, the Trustor agrees to pay, indemnify and hold each Indemnitee harmless from and against any loss, costs, damages and expenses which such Indemnitee may suffer, expend or incur in consequence of or growing out of any misrepresentation by the Trustor in this Security Instrument or in any writing contemplated by or made or delivered pursuant to or in connection with this Security Instrument.

(c)      If and to the extent that the obligations of the Trustor under this paragraph 19 are unenforceable for any reason, the Trustor hereby agrees to make the maximum contribution to the payment and satisfaction of such obligations which is permissible under applicable law.

20.   Borrower shall pay or reimburse Lender for all out-of-pocket costs and expenses (including but not limited to attorneys' fees and disbursements) Lender may pay or incur in connection with the preparation, review and negotiation of this Security Instrument.  All obligations provided for in this paragraph 20 shall survive any termination of this Security Instrument.

21.   This Security Instrument shall apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administers, executors, successors and assigns. All obligations of Trustor hereunder are joint and several. The term "Beneficiary" shall mean the owner and holder, including any pledgee, of the Note. In this Security Instrument, whenever the context requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

22.   Trustee accepts this Trust when this Security Instrument, duly executed and acknowledged, is made public record as provided by law.  Trustee is not obligated to notify any party hereto pending sale under any other Trust Deed or of any action or proceeding in which Trustor, Beneficiary, or Trustee shall be a party, unless brought by Trustee.

23.   This Security Instrument shall be construed according to the laws of the State of Utah.

24.   This Trust Deed, or a copy thereof, may be filed as a financing statement in appropriate state, county or municipal offices and/or in the real estate records of the Washington County Recorder in order to perfect and protect the security interest granted herein. The mailing address for the Beneficiary, as secured party, and Trustor, as debtor, are as stated above.

25.   The undersigned Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to him at the following address:

THE RETREAT AT ZION, LLC. DBA BALANCE HEALTH SYSTEMS

Page 6 of 10    Initials    _K3_ ___ ___

BY SIGNING BELOW, Trustor accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signature of Trustors

### THE RETREAT AT ZION, LLC. DBA BALANCE HEALTH SYSTEMS

By: _Kevin Brough_

Name: _KEVIN BROUGH_

Its: _Manager_

STATE OF UTAH                    )
                                 )ss:
COUNTY OF _Washington_           )

On the ___ day of July, 2014 personally appeared before me _Kevin Brough_ who is the _Manager_ of The Retreat at Zion, LLC. DBA Balance Health Systems, and that he/she, as the _Manager_, of The Retreat at Zion, LLC.DBA Balance Health Systems, being authorized so to do, executed the foregoing instrument in accordance with the Operating Agreement of said company and had authority for the purposes therein contained.

Notary Public _____

M. TODD SPRIGGS
Notary Public
State Of Utah
My Commission Expires October 21, 2014
Commission No. 602129

Attention: Kevin Brough
2835 Sandy Cv.
Santa Clara, UT 84765

## REQUEST FOR NOTICE OF DEFAULT
--------AND FORECLOSURE UNDER SUPERIOR-------
MORTGAGES OF DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender, at lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Trustor accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signature of Trustors

## THE RETREAT AT ZION, LLC. DBA BALANCE HEALTH SYSTEMS

By: _Kevin Brough_

Name: _KEVIN BROUGH_

Its: _MANAGER_

STATE OF UTAH          )
                       )ss:
COUNTY OF              )

On the 18th day of July, 2014 personally appeared before me _Kevin Brough_ who is the _Manager_ of The Retreat at Zion, LLC. DBA Balance Health Systems, and that he/she, as the _Manager_, of The Retreat at Zion, LLC. DBA Balance Health Systems, being authorized so to do, executed the foregoing instrument in accordance with the Operating Agreement of said company and had authority for the purposes therein contained.

_____
Notary Public

M. TODD SPRIGGS
Notary Public
State Of Utah
My Commission Expires October 21, 2014
Commission No. 602129

EXHIBIT "A"

PARCEL 3: TAX #R-1248-A-2-E-1

COMMENCING AT THE SOUTH QUARTER CORNER OF SECTION 2, TOWNSHIP 42 SOUTH, RANGE 11 WEST, OF THE SALT LAKE BASE AND MERIDIAN; THENCE N89°50'00"W, ALONG THE SECTION LINE, 1,597.18 FEET; THENCE N00°00'00"E, 301.11 FEET TO THE POINT OF BEGINNING; THENCE N19°59'48"E, 507.18 FEET; THENCE S53°05'22"E, 59.68 FEET; THENCE S76°52'03"E, 41.90 FEET; THENCE N08°48'44"E, 26.78 FEET; THENCE S80°33'50"E, 48.40 FEET; THENCE S52°28'12"E, 24.01 FEET; THENCE S36°59'33"E, 24.61 FEET; THENCE S77°34'13"E, 90.27 FEET; THENCE S55°14'19"E, 30.04 FEET; THENCE S80°23'10"E, 129.66 FEET; THENCE N61°52'53"E, 79.82 FEET; THENCE N19°39'56"E, 375.43 FEET; THENCE N31°45'25"E, 70.58 FEET; THENCE N19°22'15"E, 220.36 FEET TO A POINT LOCATED ON THE 1/16TH LINE; THENCE S89°51'01"E, ALONG SAID LINE, 395.14 FEET; THENCE DEPARTING SAID LINE AND RUNNING S00°17'29"E, 170.90 FEET; THENCE S30°49'50"W, 251.18 FEET; THENCE S54°22'20"W, 228.61 FEET; THENCE S22°23'28"W, 223.69 FEET; THENCE N72°47'06"W, 219.72 FEET; THENCE S11°46'51"W, 14.81 FEET; THENCE N81°19'58"W, 33.66 FEET; THENCE S88°02'22"W, 41.71 FEET; THENCE N87°44'12"W, 123.99 FEET TO A CURVE TO THE LEFT HAVING A RADIUS OF 60.00 FEET, AND A CENTRAL ANGLE OF 81°24'43"; THENCE SOUTHWESTERLY ALONG SAID CURVE, 85.25 FEET; THENCE S10°51'05"W, 11.72 FEET TO A CURVE TO THE LEFT HAVING A RADIUS OF 75.00 FEET, AND A CENTRAL ANGLE OF 28°13'25"; THENCE SOUTHERLY ALONG SAID CURVE, 36.94 FEET TO A POINT LOCATED ON THE CENTERLINE OF AND EXISTING DIRT ROAD; THENCE ALONG SAID CENTERLINE THE FOLLOWING THREE (3) COURSES: S17°22'20"E, 43.82 FEET TO A CURVE TO THE RIGHT HAVING A RADIUS OF 150.00 FEET, AND A CENTRAL ANGLE OF 42°43'27"; THENCE SOUTHERLY ALONG SAID CURVE, 111.85 FEET; THENCE S25°21'08"W, 112.16 FEET; THENCE DEPARTING SAID LINE AND RUNNING N89°50'00"W, 375.84 FEET TO THE POINT OF BEGINNING. CONTAINING 9.60 ACRES.

SUBJECT TO EASEMENTS, RESTRICTIONS AND RIGHTS-OF-WAY CURRENTLY OF RECORD.

TOGETHER WITH AN ADEQUATE EASEMENT FOR INGRESS AND EGRESS OVER AND ACROSS THE LAND LOCATED IN THE SOUTH 1/2 OF THE SOUTH 1/2 OF SECTION 2, AND THE NORTH 1/2 OF THE NORTH 1/2 OF SECTION 11, TOWNSHIP 42, RANGE 11 WEST, OF THE SALT LAKE BASE AND MERIDIAN. SAID EASEMENT TO RUN FROM THE COUNTY ROAD TO GRAFTON TO THE LAND HEREIN IN SAID SECTION 2, SAID EASEMENT TO BE LOCATED ALONG THE EXISTING ROAD OR AT A LOCATION TO BE DETERMINED BY MUTUAL AGREEMENT BETWEEN THE PARTIES HERETO, OR THEIR HEIRS OF ASSIGNS.

SUBJECT TO A 10.00 FOOT WIDE WATER LINE EASEMENT FOR MAINTAINING A CULINARY WATER LINE FROM AN UNDERGROUND WELL, BEING DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTH QUARTER CORNER OF SECTION 2, TOWNSHIP 42 SOUTH, RANGE 11 WEST, OF THE SALT LAKE BASE AND MERIDIAN; THENCE N00°17'29"W, ALONG THE NORTH-SOUTH CENTER SECTION LINE, 1,320.28 FEET TO THE 1/16TH CORNER; THENCE N89°51'01"W, ALONG THE 1/16TH LINE, 695.15 FEET; THENCE DEPARTING SAID LINE AND RUNNING S28°19'41"W, 258.00 FEET TO THE POINT OF BEGINNING; THENCE S80°14'45"E, 177.27 FEET; THENCE S09°45'15"W, 10.00 FEET; THENCE N80°14'45"W, 180.63 FEET; THENCE N28°19'41"E, 10.55 FEET TO THE POINT OF BEGINNING.

SUBJECT AND TOGETHER WITH A 20.00 FOOT WIDE INGRESS/EGRESS EASEMENT AS DESCRIBED IN THAT CERTAIN DRIVEWAY EASEMENT DEED, DOCUMENT #20130045906, ON FILE IN THE WASHINGTON COUNTY RECORDERS OFFICE.

SUBJECT TO A 10.00 FOOT WIDE ELECTRICAL EASEMENT AS DESCRIBED IN THAT CERTAIN RIGHT-OF-WAY EASEMENT DEED, DOCUMENT #20140005711, ON FILE IN THE WASHINGTON COUNTY RECORDERS OFFICE.

# EXHIBIT C

# Cash Flow Forecast – 12 Months    (RAZ-BHS)    Reorganizational 11 w DIP Loan

| Year: 2016-2017 | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | March | April | May | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | |
| Cash sales | 30,000 | 30,000 | 50,000 | 40,000 | 40,000 | 50,000 | 50,000 | 75,000 | 75,000 | 80,000 | 90,000 | 100,000 | 990,000 |
| Collections from Insurance | 10,000 | 15,000 | 15,000 | 20,000 | 20,000 | 20,000 | 30,000 | 30,000 | 30,000 | 40,000 | 40,000 | 50,000 | 385,000 |
| New Equity inflow | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Loans received (DIP Loan) | | 50,000 | 200,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 250,000 |
| Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Receipts** | 40,000 | 95,000 | 265,000 | 60,000 | 60,000 | 70,000 | 80,000 | 105,000 | 110,000 | 120,000 | 130,000 | 150,000 | 1,295,000 |
| **Payments** | | | | | | | | | | | | | |
| Cash purchases & Food | 600 | 800 | 800 | 1,200 | 1,800 | 2,000 | 3,500 | 4,000 | 6,000 | 6,000 | 6,000 | 6,000 | 37,500 |
| Necessary Payments to creditors | 10,000 | 5,000 | 250 | 250 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 19,500 |
| Salaries and wages | 16,000 | 20,000 | 20,000 | 24,000 | 24,000 | 24,000 | 30,000 | 30,000 | 30,000 | 40,000 | 40,000 | 50,000 | 348,000 |
| Employee benefits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 600 | 600 | 1,200 | 1,200 | 5,200 |
| Payroll taxes | 0 | 0 | 0 | 0 | 0 | 0 | 2,000 | 2,000 | 2,000 | 3,000 | 3,000 | 3,000 | 15,000 |
| Mortgage Payments | 0 | 19,000 | 19,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 19,000 | 19,000 | 19,000 | 18,000 | 297,000 |
| Utilities | 1,000 | 1,000 | 1,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 29,500 |
| Repairs and maintenance | 400 | 6,000 | 6,000 | 7,500 | 10,000 | 10,000 | 10,000 | 2,500 | 1,000 | 2,500 | 2,500 | 1,000 | 90,500 |
| Insurance | 1,413 | 500 | 500 | 1,000 | 1,000 | 500 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 10,163 |
| Travel | 0 | 0 | 0 | 0 | 750 | 750 | 750 | 750 | 1,000 | 1,000 | 1,000 | | 4,500 |
| Telephone & Internet | 400 | 400 | 400 | 400 | 500 | 500 | 500 | 500 | 2,500 | 1,000 | 500 | 500 | 4,500 |
| Postage | 50 | 50 | 50 | 250 | 250 | 50 | 50 | 150 | 50 | 50 | 50 | 50 | 1,200 |
| Office supplies | 50 | 100 | 100 | 100 | 100 | 100 | 50 | 150 | 50 | 150 | 50 | 200 | 1,800 |
| Advertising | 200 | 2,500 | 2,500 | 2,500 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 31,700 |
| Marketing/promotion | 2,000 | 2,600 | 2,500 | 2,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 32,500 |
| Professional fees | 2,000 | 2,000 | 2,000 | 2,000 | 4,000 | 250 | 250 | 250 | 250 | 500 | 500 | 500 | 14,000 |
| Training and development | 0 | 0 | 0 | 500 | 500 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,500 |
| Bank & Merchant charges | 150 | 150 | 150 | 200 | 200 | 600 | 750 | 750 | 750 | 600 | 600 | 600 | 6,800 |
| Miscellaneous | 0 | 600 | 600 | 500 | 500 | 500 | 500 | 600 | 600 | 900 | 800 | 1,200 | 6,500 |
| Contracted Providers | 5,000 | 5,000 | 7,500 | 7,500 | 10,000 | 10,000 | 10,000 | 12,000 | 15,000 | 15,000 | 15,000 | 400 | 350,000 |
| DIP Loan repayments & Fees | 0 | 15,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 16,000 | 40,000 |
| Tax payments | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 4,000 | 6,000 | 1,000 | 1,000 | | 2,500 | |
| Capital purchases (Vans, Kitchen) | 0 | 10,000 | 10,000 | 2,000 | 2,000 | 0 | 0 | 10,000 | 1,000 | 1,000 | 5,000 | 1,000 | 20,000 |
| Chapter 11 repayment plan (Proposed) | 0 | 0 | 0 | 10,000 | 10,000 | 10,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 36,000 |
| **Total Payments** | 40,263 | 90,500 | 96,250 | 79,900 | 84,890 | 83,760 | 101,450 | 118,600 | 111,000 | 121,700 | 127,850 | 131,900 | 1,197,963 |
| **Cashflow Surplus/Deficit (+)** | (263) | 4,500 | 168,750 | (18,900) | (24,890) | (13,760) | (21,450) | (13,600) | (1,000) | (1,706) | 2,150 | 18,100 | 97,037 |
| **Opening Cash Balance** | 400 | 137 | 4,637 | 173,387 | 153,487 | 128,597 | 114,837 | 93,487 | 79,887 | 78,887 | 77,187 | 79,337 | 400 |
| **Closing Cash Balance** | 137 | 4,637 | 173,387 | 153,487 | 128,597 | 114,837 | 93,487 | 79,887 | 78,887 | 77,187 | 79,337 | 97,437 | 97,437 |

## Balance Health Systems

### Balance Sheet

**May-16**

### Assets

| Current Assets | YTD | 25-May-16 |
|---|---|---|
| Cash | | 450.00 |
| Investments | | - |
| Inventories | | |
| Insurance receivables | Estimated | 75,000.00 |
| Patient receivables | Collections | 5,000.00 |
| Investments & Notes | | - |
| **Total current assets** | | **80,450.00** |

| Fixed Assets | YTD | 25-May-16 |
|---|---|---|
| Property and equipment | | 113,740.00 |
| Leasehold improvements | | |
| Real Property | | 3,000,000.00 |
| Less accumulated depreciation | | |
| **Total Fixed Assets** | | **3,113,740.00** |

| Other Assets | YTD | 25-May-16 |
|---|---|---|
| Intellectual Property, Proprietary Information, & | | 100,000.00 |
| **Total Other Assets** | | **100,000.00** |

### Total assets                                3,294,190.00

### Liabilities and owner's equity

| Current Liabilities | YTD | 25-May-16 |
|---|---|---|
| Accounts payable | | 7,493.00 |
| Accrued wages | | |
| Accrued compensation | | 25,390.00 |
| Income taxes payable | | |
| Legal Fees Due | | 12,000.00 |
| Property tax accrued | | 38,175.00 |
| **Total current liabilities** | | **83,058.00** |

| Real Property | YTD | 25-May-16 |
|---|---|---|
| Mortgages | | 2,250,000.00 |
| **Total Long Term Liabilities** | | **2,250,000.00** |

| Owner's Equity | YTD | 24-May-16 |
|---|---|---|
| Investment capital | | 459,000.00 |
| Equity in Real Property & Business Property | | 502,132.00 |
| **Total Owner's Equity** | | **961,132.00** |

### Total liabilities and owner's equity              3,294,190.00

**Balance**                                              -